Daralyn J. Durie (*pro hac vice*)
Joseph C. Gratz (*pro hac vice*)
Michael A. Feldman (*pro hac vice*)
Leeron Morad (*pro hac vice*)
DURIE TANGRI LLP
217 Leidesdorff Street
San Francisco, CA 94111
Tel: (415) 362-6666
Fax: (415) 236-6300
Email: ddurie@durietangri.com
      jgratz@durietangri.com
      mfeldman@durietangri.com
      lmorad@durietangri.com

Attorneys for Defendants
AMAZON.COM, INC. and
AMAZON DIGITAL SERVICES, INC.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| YESH MUSIC LLC, and JOHN K. EMANUELE, individually and on behalf of all other similarly situated copyright holders,<br><br>                Plaintiffs,<br><br>   v.<br><br>AMAZON.COM, INC., and AMAZON DIGITAL SERVICES, INC.,<br><br>                Defendants. | Civil Action No. 1:16-CV-01406-BMC<br><br>**REPLY IN SUPPORT OF DEFENDANTS AMAZON.COM, INC. AND AMAZON DIGITAL SERVICES, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Hon. Brian M. Cogan<br><br>**JURY TRIAL DEMANDED** |

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..................................................................................................................1

II. ARGUMENT.........................................................................................................................2

        A. All of Amazon's NOIs were timely. .........................................................................2

        B. Amazon's NOIs were served by Music Reports. ......................................................5

        C. Additional NOIs do not need to be served for subsequent releases of the same musical work...................................................................................................5

        D. The "Ambient" tracks do not contain additional musical elements and are therefore not derivative musical works....................................................................7

        E. There is no genuine issue of material fact as to the contents of the NOIs as served. ...................................................................................................................10

III. CONCLUSION..................................................................................................................10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Broad. Companies, Inc. v. Aereo, Inc.*,
   134 S. Ct. 2498 (2014) ................................................................................................ 4

*Auer v. Robbins*,
   519 U.S. 452 (1997) ..................................................................................................... 6

*Recording Indus. Ass'n of Am., Inc. v. Librarian of Cong.*,
   608 F.3d 861 (D.C. Cir. 2010) ..................................................................................... 9

*TeeVee Toons, Inc. v. DM Records, Inc.*,
   No. 05 Civ. 5602 (JGK), 2007 WL 2851218 (S.D.N.Y. Sept. 27, 2007) ............. 5, 6, 7

*Woods v. Bourne Co.*,
   60 F.3d 978 (2d Cir. 1995) ....................................................................................... 7, 9

**Statutes**

17 U.S.C. § 106(3) ............................................................................................................. 4

17 U.S.C. § 115 ........................................................................................................... 2, 10

37 C.F.R. § 201.18 ............................................................................................................ 6

**Regulations**

69 Fed. Reg. 34,578 ....................................................................................................... 6, 7

**I.     INTRODUCTION**

Plaintiffs' opposition reduces to five arguments, each simply refuted.

First, Plaintiffs argue that Amazon's NOIs were not timely because Amazon distributed Plaintiffs' songs in connection with the Amazon MP3 Store before Amazon sent NOIs. But, as set forth in Section II-A below, Plaintiffs themselves granted a voluntary mechanical license as to the Amazon MP3 Store, so no compulsory license was necessary for distribution to users who purchased that content via the Amazon MP3 Store.

Second, Yesh argues that three NOIs served electronically were not valid because Yesh had told Music Reports to stop *accepting* NOIs on its behalf. But, as discussed in Section II-B below (and as explained to Yesh in correspondence with Music Reports at that time), Music Reports does not accept NOIs on behalf of Yesh; instead, it sends NOIs on behalf of Amazon.

Third, Plaintiffs argue that a NOI must be sent per release, not per musical work. But, as explained in Section II-C, Plaintiffs do not address the 2004 Copyright Office rulemaking to the contrary, and neither does the case Plaintiffs cite—because that case dealt with NOIs sent in 2003, before the rulemaking in question.

Fourth, Plaintiffs argue that each "Ambient" track embodies a musical work that is a derivative work of the musical work embodied in the corresponding "non-Ambient" track. But, as discussed on Section II-D, Plaintiffs do not apply the Second Circuit's test for identifying a derivative work of a musical work—and when that test is applied, it is clear that the "Ambient" tracks embody changes to the *sound recording*, not any additional musical material that could constitute a derivative musical work.

Fifth, and finally, Plaintiffs argue that there is a factual dispute regarding the contents of the NOIs as served. But, as explained in Section II-E, those documents are in the record on this motion, and Plaintiffs have provided no reason to doubt their authenticity.

As set forth below, this Court should resolve the principal issue in this case by granting summary judgment that Amazon's NOIs were valid as to each of the musical works in dispute, and thus that Amazon had compulsory licenses under § 115 with respect to those works.

## II.  ARGUMENT

### A.  All of Amazon's NOIs were timely.

Plaintiffs present "stream reports" which, Plaintiffs say, show that Amazon was engaged in activities requiring a NOI before any NOI was sent, rendering Amazon's later NOIs untimely. *See* ECF Nos. 24-6, 24-7, 24-12 at 26–43, 24-15.  They say that the stream reports they attach come "from defendants' agent MusicReports' artists interface."  ECF No. 24-3 (Emanuele Decl.) ¶¶ 5-7; ECF No. 24-8 (Cupolo Decl.) ¶ 4.  Given that Music Reports' only role with respect to Plaintiffs' songs is to administer compulsory licenses requiring NOIs, it would be significant if Music Reports' records reflected public distribution in reliance on a compulsory license before NOIs were sent.  But Plaintiffs' sworn declarations are false: those "stream reports" are not from Music Reports at all.  Reply Decl. of William B. Colitre Supp. Defs.' Mot. Partial Summ. J. ("Colitre Reply Decl.") ¶¶ 2–4 (declaration of Music Reports representative).  Instead, they appear to have come from TuneCore—the company engaged by Plaintiffs to distribute their music to online music services.  Reply Decl. of Andrew Migdail Supp. Defs.' Mot. Partial Summ. J. ("Migdail Decl.") ¶¶ 15-16 (declaration of TuneCore representative); Cupolo Decl. Ex. C, ECF No. 24-12, at 33–42 (bearing the heading "TUNECORE").  This distinction is of great consequence in a dispute over the timing of the service of NOIs because—as discussed in detail below—Plaintiffs, through TuneCore, granted *voluntary* mechanical licenses to Amazon.

Plaintiffs entered into agreements on with TuneCore governing the digital distribution of their music: one on April 8, 2007 with respect to songs by The American Dollar, and one on January 5, 2011 with respect to songs by Zero Bedroom Apartment.  Migdail Decl. ¶ 2-3.

2

Plaintiffs agreed to TuneCore's standard Terms and Conditions governing music distribution. *Id.* While certain aspects of those Terms and Conditions have changed over time, *see* Migdail Decl. ¶¶ 4-13, the relevant provisions have remained constant: Plaintiffs could select one or more channels of distribution, such as Amazon or iTunes, which would be licensed to engage in "sale of permanent downloads, temporary downloads, interactive streaming (both tethered and non-tethered) and non-interactive streaming (both promotional and fee based)." Migdail Decl. Ex. A (TuneCore Terms and Conditions in effect April 8, 2007) §§ 1(a). *See also id.* § 9 ("You acknowledge that in providing the services and payments hereunder, Company will be required to enter into certain sublicensing agreements with various consumer outlets."). Plaintiffs chose to make their recordings available via Amazon. Migdail Decl. ¶ 2-3. In exchange, TuneCore agreed to give Plaintiffs the money paid by Amazon. *See, e.g.*, Migdail Decl. Ex. A (TuneCore Terms and Conditions in effect April 8, 2007) § 3(a). Critically, from the time Plaintiffs first signed up for distribution via TuneCore to the present, TuneCore's agreement with Plaintiffs has always provided that *Plaintiffs*—not Amazon or TuneCore—will secure the necessary mechanical licenses:

> 4. THIRD PARTY OBLIGATIONS.
>
> You shall be solely responsible for securing and paying for digital phonorecord delivery (DPD), mechanical and any other licenses required from musical composition copyright owners (or their agents) in connection with Company's exploitation of rights hereunder, royalties due to artists, producers and other persons who performed in the making of the Recordings and all payments that may be required under collective bargaining agreements.

*Id.* § 4; *see* Migdail Decl. Ex. J (current TuneCore Terms and Conditions) § 4 (containing language to the same effect). In this case, Plaintiffs did not need to do anything to secure those licenses, because they themselves owned copyrights to the compositions in question. ECF No. 19 (Second Amended Complaint) ¶ 1. TuneCore's agreement with Amazon passes through these

3

mechanical licenses to Amazon. Migdail Decl. Ex. K (Amazon-TuneCore Agreement) at PDF page 7 § 5.1. These agreements license not only the initial download following a purchase, but later transmissions as well. *Id.* at PDF page 20 ¶ 7. Thus, the streams reported to TuneCore of previously-purchased tracks required no NOI.[1]

Thus, far from a "smoking gun" showing that Amazon was infringing Plaintiffs' rights, the TuneCore stream reports proffered by Plaintiffs simply confirm that Amazon was doing as Plaintiffs asked—selling Plaintiffs' songs, giving Plaintiffs the money, and distributing Plaintiffs' songs to the people who bought them. Later, Amazon began using some of Plaintiffs' tracks in ways that may require a NOI—for example, by distributing them to users via the Amazon Prime Music service. Amazon's systems were designed and configured to ensure that no such use was made of one of Plaintiffs' tracks at issue until Music Reports indicated to Amazon that a NOI had been sent. Climan Decl. ¶ 5.

The documents proffered by Plaintiffs are thus in no way inconsistent with timely service of NOIs by Amazon via Music Reports. The undisputed facts, reflected in the declarations of representatives of Amazon, Music Reports, and TuneCore, show that Amazon's NOIs were

---

[1] In addition to downloads and streams relating to the Amazon MP3 service and downloads and streams as to which an NOI was sent, the TuneCore data includes downloads and streams which were reported to TuneCore, but for which no mechanical license was necessary. Specifically, starting in 2011, Amazon began offering a "non-premium music locker" service, also not at issue in this case. That service allows users to upload and store their own music files in a personal cloud storage space, and thereafter to stream or download the music files they themselves uploaded. Reply Decl. of Daniel Climan Supp. Defs.' Mot. Partial Summ. J. ("Climan Decl.") ¶ 4b. Those streams and downloads to those who already own or possess the music they are receiving cannot be part of Plaintiffs' claims because the Supreme Court has held, as a matter of law, that they do not constitute distribution "to the public." *Am. Broad. Companies, Inc. v. Aereo, Inc.*, 134 S. Ct. 2498, 2510 (2014) ("an entity that transmits a performance to individuals in their capacities as owners or possessors does not perform to 'the public[]'"). In order for a distribution to constitute copyright infringement, that distribution must be "to the public." 17 U.S.C. § 106(3).

4

timely served.

### B. Amazon's NOIs were served by Music Reports.

Yesh argues that it "revoked all authority for MusicReports to accept NOIs on its behalf" on August 21, 2014, Opp. at 6, and that this "makes the last three NOIs purportedly served electronically by MusicReports invalid," because they were served after August 21, 2014. *Id.* at 6–7. But Music Reports has never accepted NOIs, or done any other act, as the agent of Yesh. Instead, as explained in Defendants' opening brief, Music Reports *sent* NOIs as the agent of *Amazon*. Music Reports gave Yesh the option to receive those NOIs electronically, rather than on paper; after Yesh opted for electronic delivery, subsequent NOIs were delivered to Yesh by Music Reports electronically. ECF No. 22-20 (Colitre Decl.) ¶¶ 20–25. As explained in Defendants' opening brief, the August 21, 2014 email from Yesh to Music Reports did not withdraw consent to receive NOIs electronically rather than on paper, and the undisputed evidence shows that the electronic NOIs were in fact received since Plaintiffs attached them to the Second Amended Complaint. Opening Br. at 7–8. Plaintiffs' opposition does not respond to these arguments or provide any evidence that could give rise to a genuine dispute of material fact.

### C. Additional NOIs do not need to be served for subsequent releases of the same musical work.

In support of their argument that "subsequent releases require a new NOI," Plaintiffs cite only *TeeVee Toons, Inc. v. DM Records, Inc.*, No. 05 Civ. 5602 (JGK), 2007 WL 2851218, at *10 (S.D.N.Y. Sept. 27, 2007). That case does not support Plaintiffs' position, for two reasons.

*First*, the facts in *TeeVee Toons* were different in one critical respect: the NOIs in question in that case specified that the compositions were expected to be used only in connection with one particular album. *Id.* Because the defendants specified that they expected to use the

5

compositions in question only in connection with that specific album, the court held that they could not use the compositions in connection with other albums. *Id.* Here, by contrast, Amazon expected to use each composition not in connection with a single album (as in *TeeVee Toons*) but in connection with all albums containing that composition, and the NOIs in question thus accurately state that the compositions are expected to be used in connection with "Various" albums. *See, e.g.*, ECF No. 22-23 (Colitre Decl. Ex. C).

*Second*, different regulations apply to the NOIs in question in *TeeVee Toons* and the NOIs in question in this case, and those differences matter to the outcome. The NOIs in question in *TeeVee Toons* were sent in October 2003. *TeeVee Toons* at *3. But in July 2004, the Copyright Office adopted a wholesale revision of the regulations governing NOIs, codified at 37 C.F.R. § 201.18. *Compare* Reply Decl. of Joseph Gratz Supp. Defs.' Mot. Partial Summ. J. ("Gratz Reply Decl.") Ex. A (version of § 201.18 applicable in October 2003) *with* 69 Fed. Reg. 34,578, Gratz Reply Decl. Ex. B (adopting revisions to § 201.18 effective July 22, 2004). That 2004 revision added the harmless-error provision, which did not appear in earlier versions of the regulations. 69 Fed. Reg. 34,578, Gratz Reply Decl. Ex. B, at 34,584. And in its commentary on that revision, the Copyright Office explicitly clarified that, because information regarding particular releases is included on an ongoing basis in the monthly statements of account, there is no need to send a new NOI for each new release:

> In light of the fact that the purpose of the Notice of Intention is merely to give notice to the copyright owner of a licensee's intention to use the copyright owner's musical work to make and distribute phonorecords subject to the terms of the section 115 compulsory license, additional notices to update information that was correct at the time of service are not part of the statutory scheme. Once a notice is served, the copyright owner is on notice that the licensee will be using the identified musical work to make phonorecords. The licensee is then obligated to provide specific information about the types and numbers of phonorecords made

6

> and distributed as part of the monthly and annual statements of account, making it unnecessary to file follow-up notices for this purpose.

69 Fed. Reg. 34,578, Gratz Decl. Ex. B, at 34,581.  Neither side in *TeeVee Toons* cited this explanation in the briefing on their cross-motions for summary judgment—presumably because the NOIs in question in that case predated the effective date of the 2004 regulatory revision.  And because this explanation is an interpretation of the Copyright Office's own regulations, it is controlling unless it is shown to be "plainly erroneous or inconsistent with the regulation." *Auer v. Robbins*, 519 U.S. 452, 461 (1997).  Because the *TeeVee Toons* court did not have the benefit of this authority, and was addressing NOIs served before that authority was applicable, the *TeeVee Toons* holding is entitled to no weight.  As discussed in Defendants' opening brief, "additional notices to update information that was correct at the time of service are not part of the statutory scheme," 69 Fed. Reg. 34,578, Gratz Reply Decl. Ex. B, at 34,581, and Plaintiffs' argument that they are required is precluded by the Copyright Office's controlling interpretation of the relevant regulations.

    **D.**    **The "Ambient" tracks do not contain additional musical elements and are therefore not derivative musical works.**

While Plaintiffs denigrate Amazon's argument as "silly," they do nothing to grapple with the substance of that argument.  The question before the Court is whether the "Ambient" tracks embody a musical composition that is a separately-copyrightable derivative work of the musical composition underlying the corresponding "non-Ambient" tracks.  The Second Circuit set forth the test for making that determination in *Woods v. Bourne Co.*, 60 F.3d 978 (2d Cir. 1995): whether, in terms of the *musical composition*, there is "the **addition** of such new material as would entitle the creator to a copyright on the new material," "something of substance **added** making the piece to some extent a new work with the old song embedded in it but from which

7

the new has developed." *Woods*, 60 F.3d at 991 (emphasis added). Plaintiffs neither cite nor discuss nor apply that test, which Defendants discussed in their opening brief.

Instead, Plaintiffs talk about all of the musical material that they **removed** in order to create the "Ambient" versions.[2] But removing musical material is not, as a matter of law, "the **addition**" of musical material. *Woods*, 60 F.3d at 991 (emphasis added).

Other than removal of musical material, virtually all of the changes that Plaintiffs identify are changes to the timbre of the sound through the use of "effects" (which they also refer to as "plug-ins") or changes to the relative volume of the instruments.[3] *See, e.g.*, Cupolo Decl. ¶¶ 16,

---

[2] *See, e.g.*, Cupolo Decl. ¶¶ 28 ("we removed the Rhodes piano main melody . . . [w]e removed all drums and percussive elements"), 29 ("removed the guitar"), 30 ("removed all percussive elements"), 32 ("cut the [R]hodes [piano] . . . lead guitar melodies and drums/percussion were removed entirely"), 34 ("removed the voice sound effect and beat introduction"), 35 ("removed all hip hop electronic drum beats . . . removed the high pitch guitar melody buildup, and also its corresponding tension-creating drum effect . . . removed the heavy guitars, driving bassline and drumming"), 39 ("removal of the drums"), 41 ("All percussion . . . along with one treble-based synth that crackled with the beat, were also removed"), 44 ("removed the drum part"), 45 ("removing the drums and electric guitar chords, as well as the lead electric guitar melody . . . the guitar and drum rock elements have been removed"), 49 ("we removed all drums"), 50 ("removed an associated synth . . . tambourine and other electronic percussive elements were completely removed"), 53 ("we removed the main piano melody, e-bow guitar, drums, and accompanying chime synth . . . we removed the acoustic guitars, turntable break effect and piano melody line"), 54 ("the drums and main piano melody were completely removed . . . removed all solid synth bass"), 56 ("removed the entire first half of the non-ambient song progression"), 58 ("removed the piano, electronic percussion and drums . . . [t]he lead guitar and glockenspiel main melodies were removed, as well as the drums"), 59 ("removed the driving piano and electronic percussion . . . the ending entirely omits the non-ambient song's lead guitar melody"), 60 ("no piano, guitar, or drums . . . [t]he guitar lead melody is entirely omitted, along with the cymbal-heavy drumming . . . all drums and lead guitar were removed, along with the Moog lead synth melody"), 61 ("All the main melodies of the non-ambient song were either obscured or removed, including the [R]hodes piano synth, acoustic piano and guitar . . . removed all elements of the non-ambient song's outro melodies"), 62 ("Drums and electric guitar were removed"), 63 ("removed drums, guitar and all other elements from the non-ambient track . . . [t]he drums and lead guitar solo were entirely removed . . . the lead e-bow guitar was also removed").

[3] *See, e.g.*, Cupolo Decl. ¶¶ 27 ("extra-long delay and spatial reverb plugins"), 28 ("changed the volume and equalization"), 29 ("changed the reverb plugins"), 32 ("increased reverb and delay"),

8

19–20. While those are changes to the *sound recording*, they are not additions to the underlying *musical work*. "The musical work is the musical composition—the notes and lyrics of the song as they appear on sheet music. The sound recording is the recorded musical work performed by a specific artist." *Recording Indus. Ass'n of Am., Inc. v. Librarian of Cong.*, 608 F.3d 861, 863 (D.C. Cir. 2010). Changes to the "feel, timbre, and tone," Cupolo Decl. ¶ 25, are changes to the *sound recording*, and may even create a derivative-work copyright *in the changed sound recording*. But there is no dispute here that Amazon licensed all of the *sound recordings* at issue through voluntary licenses—the case is solely about Plaintiffs' underlying *musical works*. And there is no allegation that changes to the "feel, timbre, and tone," *id.*, are additional "notes and lyrics of the song as they appear on sheet music." *Recording Indus. Ass'n of Am., Inc.*, 608 F.3d at 863. For that reason, the changes to the timbre of the sound do not constitute "something of substance added" *to the musical work*. *Woods*, 60 F.3d at 991.

Accordingly, because they do not constitute separately-copyrightable derivative *musical works* under the Second Circuit's test, the Ambient tracks were licensed when Amazon sent NOIs with respect to the corresponding non-Ambient tracks.

---

34 ("increased the volume of the backing synths"), 35 ("added an equalizer"), 36 ("modified the reverb"), 38 ("modified the reverb and EQ" and "changed the volume levels"), 39 ("added [] a longer delay" and "continued to alter the reverb"), 40 ("raise the volume of the synths"), 43 ("added a larger reverb" and "modified the EQ"), 44 ("edited the EQ of the guitars, along with adding extra reverb"), 45 ("added reverb and modified the EQ"), 47 ("we modified the reverb and EQ"), 53 ("extra reverb and EQ," "spectral blending plugins," and "adjustment of reverb and EQ plugins"), 54 ("modified EQ" and "spectral blending plugins"), 55 ("compression, delay, EQ, and reverb plugins"), 56 ("modified reverb plugins"), 59 ("added reverb and delay plugins" and "heavy delay and reverb plugins"), 60 ("modified reverb, delay, and EQ plugins" and "adjusted the organ volume and reverb"), 61 ("spectral dynamics, reverb and delay plugins," "spectral dynamics plugin" and "heavy reverb plugins"), 62 ("added reverb, EQ and delay plugins" and "added reverb and delay plugins"), 63 ("modified the reverb" and "spectral dynamics plugins").

9

E. **There is no genuine issue of material fact as to the contents of the NOIs as served.**

In their Opposition, Plaintiffs argue that "plaintiffs have no way of knowing" what the contents of the NOIs were at the time they were served, and that "[t]his creates an issue of fact as to the validity of the NOIs." Opp. at 9. Not so. Each of the 14 NOIs was attached to the authenticating declaration of Mr. Colitre, of Music Reports. *See* ECF No. 22-20 ¶¶ 12–17, 22–25, 27–30. Plaintiffs have provided no evidence suggesting that those documents are not authentic.

Plaintiffs say that "[d]efendants for some reason claim that there were 14 NOIs" since, by Plaintiffs' count, there are only 12. Opp. at 2 n.2. Defendants claim that there were 14 NOIs because Mr. Colitre's declaration attached 14 NOIs addressed to Plaintiffs. *See* ECF Nos. 22-23–22-28 & 22-31–22-38 (Colitre Decl. Exs. C, D, E, F, G, H, K, L, M, N, O, P, Q, R).

### III. CONCLUSION

For the foregoing reasons, the Court should grant partial summary judgment that Amazon served valid NOIs for each musical work at issue and therefore has a compulsory license under § 115 with respect to those works.

Dated: August 5, 2016                                  Respectfully submitted,

                                                   */s/ Joseph C. Gratz*
                                          Daralyn J. Durie *(pro hac vice)*
                                          Joseph C. Gratz *(pro hac vice)*
                                          Michael A. Feldman *(pro hac vice)*
                                          Leeron Morad (*pro hac vice*)
                                          DURIE TANGRI LLP
                                          217 Leidesdorff Street
                                          San Francisco, CA 94111
                                          Tel:  (415) 362-6666
                                          Fax:  (415) 236-6300
                                          Email: ddurie@durietangri.com
                                                    jgratz@durietangri.com
                                                    mfeldman@durietangri.com

10

|  |
|---|
| lmorad@durietangri.com |

Attorneys for Defendants
AMAZON.COM, INC. and AMAZON DIGITAL SERVICES, INC.

## CERTIFICATE OF SERVICE

I certify that all counsel of record is being served on August 5, 2016 with a copy of this document via the Court's CM/ECF system.

>Richard M. Garbarini
>GARBARINI FITZGERALD P.C.
>250 Park Avenue, 7th Floor
>New York, New York 10177
>Telephone: (212) 300-5358
>Facsimile: (347) 218-9479
>Email: rgarbarini@garbarinilaw.com
>
>*Attorneys for Plaintiffs*

                                                */s/ Joseph C. Gratz*
                                                JOSEPH C. GRATZ