Daralyn J. Durie (*pro hac vice*)
Joseph C. Gratz (*pro hac vice*)
Michael A. Feldman (*pro hac vice*)
Leeron Morad (*pro hac vice*)
DURIE TANGRI LLP
217 Leidesdorff Street
San Francisco, CA 94111
Tel:  (415) 362-6666
Fax:  (415) 236-6300
Email: ddurie@durietangri.com
           jgratz@durietangri.com
           mfeldman@durietangri.com
           lmorad@durietangri.com

Attorneys for Defendants
AMAZON.COM, INC. and
AMAZON DIGITAL SERVICES, INC.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| YESH MUSIC LLC, and JOHN K. EMANUELE, individually and on behalf of all other similarly situated copyright holders,<br><br>                              Plaintiffs,<br><br>     v.<br><br>AMAZON.COM, INC., and AMAZON DIGITAL SERVICES, INC.,<br><br>                              Defendants. | Civil Action No. 1:16-CV-01406-BMC<br><br>**REPLY SUPPLEMENTAL BRIEF IN SUPPORT OF DEFENDANTS AMAZON.COM, INC. AND AMAZON DIGITAL SERVICES, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Hon. Brian M. Cogan<br><br>**JURY TRIAL DEMANDED** |

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ...................................................................................................................1

II. ARGUMENT .........................................................................................................................1

    A. Amazon provided a valid NOI with respect to "Call," "Lights Dim," "Starscapes," and "Transcendence." ...................................................................1

    B. The streaming reports from TuneCore are in accord with Amazon's records and with the timeliness of Amazon's NOIs. ................................................2

        1. Streams made in connection with the MP3 Store and the "non-premium music locker" did not require a § 115 license. .............................2

        2. Plaintiffs allege, without support, that "identical streaming data is reported to" TuneCore and Music Reports. ................................................4

        3. Plaintiffs misunderstand the Climan Declaration. .......................................5

    C. Plaintiffs' remaining arguments do not arise out of any new allegations in the Third Amended Complaint. ...........................................................................6

        1. Plaintiffs proffer yet more TuneCore streaming reports.............................7

        2. Plaintiffs discuss the amount of royalty payments, which do not relate to NOI validity. ..................................................................................7

        3. Plaintiffs discuss works which never appeared on any NOI, which do not relate to NOI validity. ......................................................................8

        4. Plaintiffs raise NOI validity arguments addressed previously....................8

        5. Plaintiffs raise NOI validity arguments not raised in the Third Amended Complaint (and which are incorrect).........................................10

    D. By failing to provide a Rule 56(d) declaration, Plaintiffs have waived any argument that discovery is necessary before decision on this motion. ...................12

III. CONCLUSION....................................................................................................................12

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Goenaga v. March of Dimes Birth Defects Found.*,
 51 F.3d 14 (2d Cir. 1995) ................................................................................................... 4, 5

*Gurary v. Winehouse*,
 190 F.3d 37 (2d Cir. 1999) ..................................................................................................... 12

*Hagner v. United States*,
 285 U.S. 427 (1932) ................................................................................................................ 9

*Manlapig v. Jupiter*,
 No. 14 Civ. 00235 (LGS), 2014 WL 3906464 (S.D.N.Y. Aug. 11, 2014) ............................ 12

*Meckel v. Cont'l Res. Co.*,
 758 F.2d 811 (2d Cir. 1985) .................................................................................................... 9

*Nat'l Ret. Fund v. Caesars Entm't Corp.*,
 No. 15-CV-2048 (LAK), 2016 WL 6601561 (S.D.N.Y. Nov. 7, 2016) ................................ 12

*Saks Inc. v. Attachmate Corp.*,
 No. 14 Civ. 4902 (CM), 2015 WL 1841136 (S.D.N.Y. Apr. 17, 2015) .................................. 3

*Storage Tech. Corp. v. Custom Hardware Eng'g & Consulting, Inc.*,
 421 F.3d 1307 (Fed. Cir. 2005) ............................................................................................... 3

*TeeVee Toons, Inc. v. DM Records, Inc.*,
 No. 05 Civ. 5602 (JGK), 2007 WL 2851218 (S.D.N.Y. Sept. 27, 2007) ................................ 9

*Universal Serv. Admin. Co. v. PT-1 Commc'ns, Inc.*,
 437 B.R. 766 (E.D.N.Y. 2010) ................................................................................................ 9

**Statutes**

17 U.S.C. § 115 ............................................................................................................... passim

37 C.F.R. § 201.18 ........................................................................................................ 1, 10, 11

37 C.F.R. § 385.10(c) ............................................................................................................... 3

**Rules**

Fed. R. Civ. P. 16(f)(1) ............................................................................................................. 4

Fed. R. Civ. P. 37(b)(2) ............................................................................................................ 4

Fed. R. Civ. P. 56(d) .............................................................................................................. 12

**Regulations**

78 Fed. Reg. 67,938 ............................................................................................................... 2

78 Fed. Reg. 67,945 ............................................................................................................... 3

I.  **INTRODUCTION**

Amazon's Opening Supplemental Brief addressed two topics: the newly raised issue in the TAC regarding song titles listed with the parenthetical "(ALT MIX)," ECF No. 46 at 2–5, and the newly-proffered streaming reports from TuneCore which were attached to the TAC, *id.* at 5–9.  In their Supplemental Opposition Brief, Plaintiffs once again attempt to insert a raft of new issues far afield both from the issues discussed in Amazon's Opening Supplemental Brief and from the issue of NOI validity, which is the only subject of this motion.  Even to the extent those arguments are properly before the Court, those arguments do not affect the conclusion that this Court should grant partial summary judgment of NOI validity.

II. **ARGUMENT**

A.  **Amazon provided a valid NOI with respect to "Call," "Lights Dim," "Starscapes," and "Transcendence."**

In its Opening Supplemental Brief, Amazon argued that the erroneous inclusion of the parenthetical "(ALT MIX)" was a harmless error, because in the context of that NOI (No. 585746), no reasonable person could fail to be on notice as to which musical works were to be used.  Yesh makes no argument that they had any confusion about which musical works were the subject of the notice.  For that reason, they cannot (and do not) take issue with the conclusion that the erroneous inclusion of the parenthetical "(ALT MIX)" did "not materially affect the adequacy of the information required to serve the purposes of section 115(b)(1)," and for that reason did "not render the Notice invalid." 37 C.F.R. § 201.18(g).

Yesh argues that the "ALT MIX" tracks cannot be the subject of a license under § 115 because they were "never released to the general public." ECF No. 48 ("Opp. Suppl. Br.") at 14.  That is beside the point.  Assuming that the "ALT MIX" tracks embody different musical works than the non-"ALT MIX" versions, Plaintiffs are correct (though they quote the wrong portion of

1

the statute).  A § 115 license applies to a musical work only "[w]hen phonorecords of a nondramatic musical work have been distributed to the public in the United States under the authority of the copyright owner," and (at least so far as the record on this motion shows), the "ALT MIX" tracks were never distributed to the public.  But that doesn't matter, because Amazon is not claiming to have a § 115 license with respect to the "ALT MIX" tracks; Amazon does not need one, because those tracks were never released, and cannot plausibly have found their way to Amazon.  Amazon has a valid NOI with respect to "Call," "Lights Dim," "Starscapes," and "Transcendence," which (as Plaintiffs appear to agree) any reasonable person would understand are the musical works that are the subject of NOI No. 585746.

> **B.     The streaming reports from TuneCore are in accord with Amazon's records and with the timeliness of Amazon's NOIs.**

Amazon has proffered a declaration from Daniel Climan, its Principal Specialist for Digital Music, which shows that the streaming reports from TuneCore do not, as Plaintiffs allege, reflect that activity for which a § 115 license was required took place before the service of the applicable NOI in any instance.  Plaintiffs attack this declaration from a number of angles, but none is persuasive.

> **1.     Streams made in connection with the MP3 Store and the "non-premium music locker" did not require a § 115 license.**

Plaintiffs argue that "[a]ll Locker Services were brought under Section 115 as of January 1, 2014," apparently because that was the effective date of the regulations setting compulsory-license rates for certain locker-service functionality.  Opp. Suppl. Br. at 4; *cf.* Garbarini Suppl. Decl. Ex. E, ECF No. 51-1 (reproducing 78 Fed. Reg. 67,938, bearing an effective date of January 1, 2014).  Plaintiffs do not argue that streams made in connection with the MP3 Store and the "non-premium music locker" infringed copyright prior to the effective date of that regulation; as discussed in Amazon's previous briefing, they do not.  ECF No. 27 at 4 n.1; ECF

2

No. 46 at 5–9. Instead, Plaintiffs argue that the regulations alter the scope of copyright liability, imposing a requirement that any service falling within the broad definition of a "locker service" be licensed under § 115, even if it otherwise would not infringe copyright. Plaintiffs contend that the MP3 Store and the "non-premium music locker" fall within the regulations' definition of a "locker service" and must be licensed for that reason.

Section 115 neither defines nor alters the scope of a copyright holder's exclusive rights. The very regulations that Plaintiffs submit to the Court are explicit about this: "Neither this subpart nor the act of obtaining a license under 17 U.S.C. 115 is intended to express or imply any conclusion as to the circumstances in which any of the exclusive rights of a copyright owner are implicated or a license, including a compulsory license pursuant to 17 U.S.C. 115, must be obtained." Garbarini Suppl. Decl. Ex. E, ECF No. 51-1 at 19 (reproducing 78 Fed. Reg. 67,945); *see also* 37 C.F.R. § 385.10(c) (current codification of that passage). This passage confirms the application of the "entirely unremarkable principle" that activities falling outside the scope of a license "constitute copyright infringement only when those uses would infringe in the absence of any license agreement at all." *Storage Tech. Corp. v. Custom Hardware Eng'g & Consulting, Inc.*, 421 F.3d 1307, 1316 (Fed. Cir. 2005); *see Saks Inc. v. Attachmate Corp.*, No. 14 Civ. 4902 (CM), 2015 WL 1841136, at *10 (S.D.N.Y. Apr. 17, 2015) (characterizing this principle as "hornbook law"). Thus, it does not matter whether a particular "product fell under Section 115" (whatever that means). Opp. Suppl. Br. at 8. The question is whether a particular act would constitute copyright infringement in the absence of a license. As discussed in prior briefing, streams made in connection with the MP3 Store and the "non-premium music locker" do not infringe copyright and require no license.

## 2. Plaintiffs allege, without support, that "identical streaming data is reported to" TuneCore and Music Reports.

In his declaration, Richard Cupolo, one of the members of the band The American Dollar, states that "[t]he identical streaming data is reported to both PROs." Cupolo Decl. ¶ 30, ECF No. 54 (referring to TuneCore and Music Reports).[1] That statement is unsupported, and it is at odds with the record, which shows that Amazon reported all streams to TuneCore, but reported only those streams requiring a § 115 license to Music Reports. Mr. Cupolo provides no basis for his statement, and has none. "The party opposing summary judgment may not rely simply on conclusory statements" such as the one in Mr. Cupolo's declaration. *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995). A summary judgment "motion will not be defeated merely on the basis of conjecture or surmise." *Id.* (internal quotation marks and modification omitted). And that is all Mr. Cupolo offers. He does not even claim to have personal knowledge of the contents of his declaration, which include his conjectures about the personal media habits of everyone under 40 years of age, ¶ 7, the technical operation of Amazon's servers, ¶ 10, and his opinions on matters of law, ¶¶ 12–14, 16, 17. Plaintiffs cannot avoid summary judgment by swearing under penalty of perjury to facts of

---

[1] Plaintiffs' December 6, 2016 filing of their Opposing Supplemental Brief was timely. *See* Scheduling Order (Nov. 16, 2016) ("Defendants' supplemental brief due 11/22/16, plaintiffs' opposition is due 14 days later, and defendants' reply 14 days thereafter."). The declarations in support of the brief were not timely filed, and Plaintiffs neither sought leave to file their declarations late nor provided any explanation for their lateness. *See* ECF No. 51 (filed at 2:39 PM EST on December, 7, 2016), 53 (filed at 5:26 PM EST on December 7, 2016), 54 (filed at 7:57 PM EST on December 7, 2016). This is not the first time Plaintiffs have violated one of the Court's scheduling orders. *See* Order of Oct. 6, 2016. The Court may disregard the declarations as a sanction for noncompliance with that order. *See* Fed. R. Civ. P. 16(f)(1) (permitting sanctions "authorized by Rule 37(b)(2)(A)(ii)–(vii)"); Fed. R. Civ. P. 37(b)(2)(A)(ii) (sanctions may include "prohibiting the disobedient party . . . from introducing designated matters in evidence").

4

which they have no knowledge. Amazon has explained the difference between the TuneCore and Music Reports statistics, and why that difference does not affect the validity of the NOIs at issue. Mr. Cupolo's unsupported assertions to the contrary do not affect that conclusion.

### 3. Plaintiffs misunderstand the Climan Declaration.

Plaintiffs call Mr. Climan's declaration "A FARCE," Opp. Suppl. Br. at 4, but they provide no evidence inconsistent with the facts set forth in his declaration. "The party opposing summary judgment may not rely simply . . . on contentions that the affidavits supporting the motion are not credible[.]" *Goenaga*, 51 F.3d at 18 (internal quotation marks omitted). As set forth below, that is all Plaintiffs do; the supposed inconsistencies in the Climan declaration simply don't exist.

Plaintiffs begin by quoting a portion of paragraph 6 of the Climan declaration, which explains that all of the streams reported in the TuneCore reports proffered by Plaintiffs in connection with the TAC resulted not from activity requiring a § 115 license, but from files that had been purchased from the MP3 Store or uploaded by the user. Opp. Suppl. Br. at 4 (quoting Climan Suppl. Decl. ¶ 6, ECF No. 46-7). In apparent agreement, Plaintiffs argue that "[o]n January 1, 2014, all streams on AMAZON's system came from purchased or uploaded content." *Id.* We do not understand what distinction Plaintiffs intend to draw between Mr. Climan's statement and the facts as Plaintiffs state them.

Plaintiffs proceed to argue that the existence of streaming activity before the date of the relevant NOI renders "flat out incorrect" Mr. Climan's statement that Amazon's "system is designed and configured, with respect to those tracks, to prevent the use of any Amazon Cloud Player Premium or Amazon Prime Music features with respect to tracks which had not been identified to the system as tracks for which an NOI was sent." *Id.* at 5–6 (quoting Climan Suppl. Decl. ¶ 7). But there is no inconsistency: the entire point is that Amazon's systems draw a

5

distinction between streams and downloads relating to Amazon Cloud Player Premium and Amazon Prime Music functionality (which Amazon's systems are designed to enable with respect to Plaintiffs' tracks only after a NOI has been sent for a given track) and streams and downloads relating to the "non-premium locker service" and the MP3 store (which do not require a § 115 license and which Amazon enables whether or not a NOI has been sent for a given track). Plaintiffs say they think this claim is "silly," Opp. Suppl. Br. at 6, but provide no facts or evidence inconsistent with it.

Plaintiffs say that "Climan also falsely claims the above-chart shows all streaming activity from 7/2012 to 12/2015." *Id*. at 7. The discrepancy is easy to explain: the chart, *which is reproduced immediately above this accusation in Plaintiffs' brief*, states that it covers the period through 12/2014, not the period through 12/2015. *Id.* at 6.

Finally, Plaintiffs say that the Climan declaration reports sales figures that differ from the correct sales figures—"10 for *Chase* and 6 for *Call*, not 102 and 89 times as Climan claims." *Id.* at 7. But Plaintiffs are talking about sales, and Climan is talking about downloads. There are more downloads than sales, because once an MP3 sale is made, that particular user may download the file more than once. And some downloads do not pertain to any sale—here, for example, when the user has previously uploaded the file and later downloads it from the user's personal storage area. *See* ECF No. 30 ¶ 4.

C. **Plaintiffs' remaining arguments do not arise out of any new allegations in the Third Amended Complaint.**

The purpose of this round of supplemental briefing is to address new allegations in the Third Amended Complaint. Plaintiffs have not limited themselves to arguments regarding those allegations. Plaintiffs have had a full and fair opportunity to brief any issues during the initial round of briefing. Briefing on this motion must come to an end sometime, and Plaintiffs should

be limited to arguments responsive to Amazon's Opening Supplemental Brief—or, at most, to arguments based on new facts in the Third Amended Complaint. The arguments discussed below should be stricken. In the alternative, as discussed below, they do not affect the conclusion that this Court should grant partial summary judgment of NOI validity.

### 1. Plaintiffs proffer yet more TuneCore streaming reports.

In the initial round of briefing, Plaintiffs proffered stream reports from TuneCore, and Amazon discussed, in response, why those streams were entirely consistent with the timeliness of Amazon's NOIs, since they reflect activity that did not require a NOI. ECF No. 27 at 2–4. In the TAC, Plaintiffs proffered more stream reports from TuneCore, and Amazon again discussed, in its Opening Supplemental Brief, why those streams were entirely consistent with the timeliness of Amazon's NOIs, since they too reflect activity that did not require a NOI. ECF No. 46 at 5–9. Now, Plaintiffs proffer yet more stream reports from TuneCore. ECF No. 54-1 at 1–13, 73–78. The song remains the same. The TuneCore stream reports reflect some streaming activity that did not require a NOI—and that is why some of the reported activity occurred before the date of the relevant NOI, and why some post-NOI streams were not reported to Music Reports. Reply Declaration of Daniel Climan ¶ 4, ECF No. 30.

### 2. Plaintiffs discuss the amount of royalty payments, which do not relate to NOI validity.

Plaintiffs argue that the Monthly Statements of Account they received from Music Reports underreport streaming activity. Opp. Suppl. Br. at 18. They say that it is suspicious that the January 2014 and February 2014 Monthly Statements of Account for one of Amazon's services report the same numbers, each adding up to a royalty of less than one cent. Opp. Suppl. Br. at 11. (That allegation appears nowhere in the Third Amended Complaint.) And they say that Music Reports underreported streams, since there is a difference between the number of

7

streams reported by Music Reports and the number of streams reported by TuneCore. Opp. Suppl. Br. at 14.

Those allegations are without merit; as discussed above, the difference between the TuneCore and Music Reports statistics comes from the fact that not all streams require a § 115 license, because some relate to the MP3 Store and the "non-premium music locker." But more to the point, they have nothing to do with this motion: even if Plaintiffs were right that there was underreporting of streams, that would in no way affect the validity of Amazon's NOIs. NOI validity is the only issue before the Court on this motion, and so arguments about post-NOI underreporting cannot affect the conclusion that this Court should grant partial summary judgment of NOI validity.

### 3. Plaintiffs discuss works which never appeared on any NOI, which do not relate to NOI validity.

Plaintiffs argue that certain Yesh recordings do not appear on any NOI. Opp. Suppl. Br. at 16–17. As to the nine recordings they identify in the text of their brief, they are mistaken; the musical works embodied in those recordings appeared on NOI No. 557475, dated May 22, 2013. Supplemental Declaration of William B. Colitre ("Suppl. Colitre Decl.") ¶¶ 2–3 & Corrected Ex. E. That is not to say that Plaintiffs have not written at least some musical works as to which Amazon has not sent an NOI. But the issue before the Court on this motion is the validity of the NOIs Amazon did send; the existence of other musical works cannot affect the validity of these NOIs one way or the other.

### 4. Plaintiffs raise NOI validity arguments addressed previously.

#### a. Plaintiffs have not rebutted the "mailbox rule" presumption that the NOIs that were mailed were received.

Plaintiffs argue that "only one of the ten NOIs was served." Opp. Suppl. Br. at 18. This issue has been addressed elsewhere at length. *See, e.g.*, ECF No. 22-1 at 6–8. And as discussed

8

elsewhere, this case presents a straightforward application of the "mailbox rule": "Proof that a letter properly directed was placed in a post office creates a presumption that it reached its destination in usual time and was actually received by the person to whom it was addressed." *Universal Serv. Admin. Co. v. PT-1 Commc'ns, Inc.*, 437 B.R. 766, 774 (E.D.N.Y. 2010) (quoting *Hagner v. United States*, 285 U.S. 427, 430 (1932)). "The mere denial of receipt does not rebut that presumption. There must be—in addition to denial of receipt—some proof that the regular office practice was not followed or was carelessly executed so the presumption that notice was mailed becomes unreasonable." *Meckel v. Cont'l Res. Co.*, 758 F.2d 811, 817 (2d Cir. 1985). Plaintiffs provide nothing of the sort. They assert that Mr. Colitre is not credible because they have alleged that he participated in the falsification of royalty reports; as discussed above, this accusation is baseless. But at any rate, Plaintiffs provide no reason to believe that Mr. Colitre is unfamiliar with "regular office procedure" with respect to the mailing of NOIs at Music Reports, which is the question under the "mailbox rule." *See id.* ("[U]nder New York law personal knowledge is required only to establish regular office procedure, not the particular mailing.").

### b. The issue regarding the "ambient" tracks has been fully addressed elsewhere.

The allegations of the TAC add no new material facts with respect to the relationship between the "ambient" and their "non-ambient" counterparts. Plaintiffs attempt to insert new legal arguments about that issue, which has already been fully ventilated. Opp. Suppl. Br. at 17. They include a block quote from a case, *TeeVee Toons, Inc. v. DM Records, Inc.*, No. 05 Civ. 5602 (JGK), 2007 WL 2851218 (S.D.N.Y. Sept. 27, 2007), which was previously cited and discussed in Plaintiffs' briefing, ECF No. 24 at 7, and previously distinguished by Amazon because it was interpreting a prior version of the applicable regulations. ECF No. 27 at 5–7.

9

(Perhaps that is why Plaintiffs chose to omit the citation to the case from which their block quote is taken.) There is nothing new here.

### 5. Plaintiffs raise NOI validity arguments not raised in the Third Amended Complaint (and which are incorrect).

#### a. The regulations permit the omission of a signature from electronically-served NOIs.

For the first time in their Supplemental Opposition, Plaintiffs argue that the omission of a signature from NOIs 551475, 569297, 585746, 671937, and 676251 renders them invalid. Opp. Suppl. Br. at 11–12. These allegations appear nowhere in the TAC, and may be set aside for that reason alone.

But they also lack merit. NOI 557475, which was served by mail, did, in fact, bear a signature. *See* Suppl. Colitre Decl. ¶¶ 2–3 & Corrected Ex. E. So did NOI 569297, which was also served by mail. *See* Colitre Decl. Ex. G, ECF No. 22-27, at 4.

The remaining NOIs as to which Yesh alleges invalidity for lack of signature—NOIs 585746, 671937, and 676251—were served electronically by posting to "Yesh Music's web account on the Music Reports licensing website." Colitre Decl. ¶¶ 22, 24, 25, ECF No. 22-20. The applicable regulations expressly contemplate that, when a NOI is served electronically, a physical signature is not to be included, and instead "[i]f the Notice is served electronically, the person or entity intending to obtain the compulsory license and the copyright owner shall establish a procedure to verify that the Notice is being submitted upon the authority of the person or entity intending to obtain the compulsory license." 37 C.F.R. § 201.18(e)(4). That is what happened here: the NOIs were accessed via Yesh's account on the Music Reports licensing website, verifying that they really came from Music Reports. And to the extent any doubt remains, the omission of a signature—where that omission did not in any way cause confusion or

10

affect the amount of royalties paid—is a quintessential harmless error which "shall not render the Notice invalid." 37 C.F.R. § 201.18(g).

### b. Providing notice with respect to "various" artists, label names, and catalogue numbers is appropriate under the regulations.

For the first time in their Supplemental Opposition, Plaintiffs take the position that certain NOIs are invalid because they "fail[] to state the artist," the "label name," and the "catalogue number." Opp. Suppl. Br. at 12–13. These allegations appear nowhere in the TAC, and may be set aside for that reason alone.

The argument also lacks merit. As Amazon pointed out in its opening brief back in July, each NOI indicates that Amazon intends to use the musical works at issue in connection with recordings by "various" artists, bearing "various" catalog numbers and label names. ECF No. 22-1 at 11. This places the recipient on notice that rather than relating solely to a single recording, Amazon intends to include in its services "various" recordings of a particular song. As discussed in Amazon's original opening brief, providing notice that Amazon expects to distribute various unknown future recordings of the musical work at issue comports with the applicable regulations, which expressly contemplate that the sender of the NOI may not have complete information about the sound recordings in which the musical work will be embodied: so long as the recording artist, catalog number, and label name are "given in good faith and on the basis of the best knowledge, information, and belief of the person signing the Notice," "later developments affecting the accuracy of such information shall not affect the validity of the Notice." 37 C.F.R. § 201.18(d)(3). Accordingly, indication that the NOIs relate to "various" recordings does not affect their validity.

11

### D. By failing to provide a Rule 56(d) declaration, Plaintiffs have waived any argument that discovery is necessary before decision on this motion.

Rule 56(d) provides that "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may" defer or deny the motion on that ground. Fed. R. Civ. P. 56(d). As the Second Circuit "often ha[s] said, a party resisting summary judgment on the ground that it needs discovery in order to defeat the motion must submit an affidavit showing (1) what facts are sought to resist the motion and how they are to be obtained, (2) how those facts are reasonably expected to create a genuine issue of material fact, (3) what effort affiant has made to obtain them, and (4) why the affiant was unsuccessful in those efforts." *Gurary v. Winehouse*, 190 F.3d 37, 43 (2d Cir. 1999) (internal quotation marks and modifications omitted). Where a party has "merely asserted in their memorandum" that there are genuine issues of material fact that require discovery to resolve, summary judgment may not be avoided on the ground that discovery is necessary. *Nat'l Ret. Fund v. Caesars Entm't Corp.*, No. 15-CV-2048 (LAK), 2016 WL 6601561, at *1 (S.D.N.Y. Nov. 7, 2016).

In a few places, Plaintiffs refer, *en passant*, to a desire for discovery, and to their view that the Court should be "loath to grant summary relief without discovery." Opp. Suppl. Br. at 18; *see, e.g.*, *id.* at 8. Because Plaintiffs "provide no affidavit or declaration identifying specific facts essential to their opposition," this "argument is accordingly without merit." *Manlapig v. Jupiter*, No. 14 Civ. 00235 (LGS), 2014 WL 3906464, at *2 (S.D.N.Y. Aug. 11, 2014).

### III. CONCLUSION

For the foregoing reasons, the Court should grant partial summary judgment that Amazon served valid NOIs for each musical work at issue and therefore has a compulsory license under § 115 with respect to those works.

Dated: December 20, 2016 Respectfully submitted,

                                                 */s/ Joseph C. Gratz*
Daralyn J. Durie *(pro hac vice)*
Joseph C. Gratz *(pro hac vice)*
Michael A. Feldman *(pro hac vice)*
Leeron Morad (*pro hac vice*)
DURIE TANGRI LLP
217 Leidesdorff Street
San Francisco, CA 94111
Tel: (415) 362-6666
Fax: (415) 236-6300
Email: ddurie@durietangri.com
       jgratz@durietangri.com
       mfeldman@durietangri.com
       lmorad@durietangri.com

Attorneys for Defendants
AMAZON.COM, INC. and AMAZON DIGITAL SERVICES, INC.

## **CERTIFICATE OF SERVICE**

I certify that all counsel of record is being served on December 20, 2016 with a copy of this document via the Court's CM/ECF system.

>Richard M. Garbarini
>GARBARINI FITZGERALD P.C.
>250 Park Avenue, 7th Floor
>New York, New York 10177
>Telephone: (212) 300-5358
>Facsimile: (347) 218-9479
>Email: rgarbarini@garbarinilaw.com
>
>*Attorneys for Plaintiffs*

*/s/ Joseph C. Gratz*
JOSEPH C. GRATZ

14