UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
                                                            :

YESH MUSIC, LLC and JOHN K.                :
EMANUELE, individually and on behalf of   :
  all other similarly situated copyright holders,   :   **MEMORANDUM DECISION &**
                                                            :   **ORDER**
                              Plaintiffs,                 :
                                                            :   16 Civ. 1406 (BMC)
                            - against -                  :
                                                            :
AMAZON.COM, INC. and AMAZON         :
DIGITAL SERVICES INC.,                      :
                                                            :
                              Defendants.                :
----------------------------------------------------------- X

**COGAN,** District Judge.

By Memorandum Decision and Order dated April 8, 2017 (the "Order"), I granted in part, and denied in part, defendants Amazon.com, Inc. and Amazon Digital Service, Inc.'s (together "Amazon" or "defendant") motion for partial summary, finding that Amazon has valid compulsory licenses to plaintiffs' songs, except that there is a genuine factual dispute as to whether the ambient versions of plaintiffs' songs are covered by those compulsory licenses. Presently before the Court is plaintiffs' motion for reconsideration of the Order pursuant to Federal Rule of Civil Procedure 60(b), or, in the alternative, for certification of the Order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). Familiarity with the facts and the Order is assumed.

Plaintiffs' motion for reconsideration is entirely improper. Plaintiffs have submitted three declarations[1] and 15 attached exhibits containing new evidence, often without an

---

[1] Without seeking permission from the Court as is required under Local Rule 6.3, plaintiffs filed the declaration of Richard Cupolo as an attachment to their memorandum in support of their motion for reconsideration. Ten days after filing their motion, plaintiffs then sought leave to file two additional declarations and three additional exhibits, claiming that since they had filed their motion, they discovered new evidence. Plaintiffs' untimely motion to file

explanation as to why this evidence could not have been discovered earlier, and they have used their motion as an opportunity to relitigate issues decided in the Order by asserting a multitude of new arguments never raised in the two prior rounds of briefing. To make matters worse, much of plaintiffs' memoranda in support of their motion is unclear to the point of being unintelligible.

Plaintiffs have sufficiently confused, or perhaps attempted to deceive, defendants and this Court by: (1) using terms that have never been used in this case previously, without providing a definition or explanation as to what they are referring; (2) referring to blurry screen shots of websites that are impossible to read; (3) referring to exhibits that do not exist; (4) manipulating a quotation from the TuneCore agreement Terms and Conditions so that the version in plaintiffs' memorandum is materially misleading; and (5) claiming that Andrew Migdail previously "testified" that he used "Diamond Marketing Service" to effect service of the NOIs and "admitted" that Diamond Marketing Service is a marketing company that focuses on healthcare, when there is no mention of Diamond Marketing Service anywhere in Migdail's declaration. I cannot tell whether this is a result of a pattern and practice of sloppy work, or an intentional attempt to deceive the Court, but, regardless of the cause, plaintiffs' counsel is warned that any further instances of this conduct will expose it to sanctions for engaging in vexatious and frivolous litigation.

The Court has spent an exorbitant amount of time attempting to decipher plaintiffs' arguments. Plaintiffs' motion is frivolous and it is denied for the following reasons. To the extent any of plaintiffs' arguments are not specifically addressed below, they are rejected as

---

two additional declarations, one by Richard Cupolo and one by plaintiffs' counsel Richard Garbarini, is denied. Both the Garbarini affidavit and the Cupolo affidavit violate the Federal Rules of Evidence and this Court's Individual Practice Rules concerning the use of affidavits because Cupolo and Garbarini each engage in impermissible legal argument. Moreover, even if I considered these declarations, neither would warrant granting plaintiffs' motion. The Cupolo affidavit includes numerous new factual allegations that are irrelevant to the issues decided in the Order. The Garbarini affidavit summarizes a document attached to the Migdail Declaration that the Court previously considered in issuing the Order. The Court need not give any further attention to these declarations.

incoherent.

## DISCUSSION

### I. Motion for Reconsideration

Plaintiffs' motion for reconsideration is governed by Federal Rule of Civil Procedure 60(b) and Local Rule 6.3. Under Local Rule 6.3, the party moving for reconsideration must file "a memorandum setting forth concisely the matters or controlling decisions which counsel believes the Court has overlooked." A motion for reconsideration is not a proper tool for a party dissatisfied with the court's ruling to merely relitigate issues previously determined by the court or reargue the same points that were previously raised and rejected. See Zerman v. Jacobs, 751 F.2d 82, 85 (2d Cir. 1985); Sass v. MTA Bus Co., 6 F. Supp. 3d 238, 244 (E.D.N.Y. 2014) (A reconsideration motion "is neither an occasion for repeating old arguments previously rejected nor an opportunity for making new arguments that could have previously been made.") (internal quotation marks omitted); Range Rd. Music v. Music Sales Corp., 90 F. Supp. 2d 390, 392 (S.D.N.Y. 2000) ("The . . . limitation on motions for reconsideration is to ensure finality and to prevent the practice of a losing party examining a decision and then plugging the gaps of the lost motion with additional matters."). Indeed, a motion for reconsideration should be construed narrowly so as to not be "used as a substitute for appealing a final judgment." Perez v. United States, 378 F. Supp. 2d 150, 155 (E.D.N.Y. 2005) (internal quotation marks omitted).

On a motion for reconsideration, "'a party may not advance new facts, issues, or arguments not previously presented to the Court.'" Nat'l Union Fire Ins. Co. v. Stroh Cos, 265 F.3d 97, 115 (2d Cir. 2001) (quoting Polsby v. St. Martin's Press, No. 97 Civ. 690, 2000 WL 98057, at *1 (S.D.N.Y. Jan. 18, 2000)). Therefore, the motion "will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked – matters, in

other words, that might reasonably be expected to alter the conclusion reached by the court."
Shrader v. CSX Transp., Inc., 70 F.3d 255, 256-57 (2d Cir. 1995).

    A. **The Climan Declaration**

In the Order, I found that Amazon had sufficiently established that none of plaintiffs' songs were impermissibly streamed on any of its four online music services because: (1) the Amazon MP3 Store and non-premium music locker do not require Amazon to secure mechanical licenses; and (2) the Climan declaration demonstrated that none of plaintiffs' songs were streamed on Amazon Cloud Player Premium or Amazon Prime Music prior to the service of an NOI. Plaintiffs propound numerous arguments as to why this finding was incorrect.

First, plaintiffs argue that the Court overlooked plaintiff Yesh's "Purchased Content Locker Monthly Reports," or the "PCL streams," which, according to plaintiffs, demonstrate that the Climan declaration is inaccurate and there is a genuine factual dispute as to whether all streams of plaintiffs' songs prior to the service of an NOI were via the Amazon MP3 Store and non-premium music locker. I do not know what plaintiffs mean by "PCL." Prior to their motion for reconsideration, plaintiffs never used the term "PCL streams" or "PCL." In fact, plaintiffs previously submitted these same reports on the motion for summary judgment, but they never identified them as "PCL" streaming reports.

In their reply memorandum, perhaps in acknowledgment of Amazon's point in its memorandum in opposition to the motion that it also does not know what plaintiffs mean by "PCL," plaintiffs no longer use that term and instead refer to the "PCL" streams as "non-premium locker" streams. I assume that by "non-premium locker," plaintiffs are referring to the "non-premium music locker," which is one of the four Amazon online music services that were discussed at length in the Order and the subject of the Climan declaration. I will thus construe

all references to "PCL" to mean the "non-premium music locker."

As I explained in the Order, the Climan declaration established that all streams of plaintiffs' songs prior to the service of an NOI occurred via the non-premium music locker or the Amazon MP3 Store. Plaintiffs now seem to be arguing that the monthly streaming reports Yesh received for Amazon's use of its songs on the non-premium music locker demonstrate that the Climan declaration is false because they prove that eight of plaintiffs' songs were streamed significantly fewer times on the non-premium music locker than the Climan declaration represented. But the non-premium music locker streaming reports – the only evidence plaintiffs identify as supporting this argument – do not even mention any of the eight songs for which plaintiffs claim the Climan declaration inaccurately reported streams. Of course the number of streams identified on the monthly reports plaintiffs have submitted do not equal the number of streams identified in the Climan declaration – the reports relate to completely different songs. The non-premium music locker streaming reports do not undermine the Climan declaration, as plaintiffs argue; they simply demonstrate the incoherence of plaintiffs' arguments.

Relatedly, plaintiffs argue that the Court overlooked that the chart attached to the Climan declaration, which shows the number of streams of plaintiffs' songs on Amazon's various online music services, does not contain a column specifically identifying the number of streams on the non-premium music locker. I reject plaintiffs claim that this was a "trick" used to deceive the Court. The chart clearly identifies that there were no streams via the Cloud Player Premium and Amazon Prime Music, and that the combined number of plays and downloads that Amazon reported to TuneCore equal the number of streams identified on the streaming reports produced by plaintiffs. As I explained in the Order, plaintiffs have identified nothing that refutes the Climan declaration or even calls its accuracy into question. Plaintiffs' claim that the Climan

5

declaration is unreliable because the chart should have had a column specifically titled "non-premium music locker" is a non-sequitur.

Finally, plaintiffs argue that the Court made impermissible "credibility determinations" because it placed undue weight on the Climan declaration submitted by defendant and did not give the proper weight to the Cupolo declaration submitted by plaintiffs. Plaintiffs have misunderstood the Order. I did not reject the Cupolo declaration because I found him to be incredible. In fact, I relied on a number of Cupolo's averments in denying Amazon's motion for summary judgment on plaintiffs' claims regarding their ambient songs. I did, however, reject portions of the Cupolo declaration where he made unsubstantiated allegations that were not based on his personal knowledge, such as his averment that "there is no such thing as a 'personal locker.' A user either joins the free locker service or the premium locker service. There is no specific designated place on a server. Rather, all user's songs are thrown into one digital library . . . ."

As I explained in the Order, "[w]here a party relies on affidavits to establish facts, the statements "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant . . . is competent to testify on the matters stated."). Fed. R. Civ. P. 56(c)(4). Cupolo has no personal knowledge as to the internal operations and methods of Amazon's online music services, and therefore his declaration does not create a factual dispute or undermine the accuracy of the Climan declaration.

**B.** "**The Non-Premium Music Locker**

In the Order, I held that the non-premium music locker does not require Amazon to secure a compulsory license because there is no distribution to the "public." There is no distribution to the "public" because users are only accessing songs that they had previously

6

owned and themselves uploaded to their personal lockers. Plaintiffs claim that they have discovered new evidence that demonstrates that the "PCL [the non-premium music locker] service has streamed non-purchased content." Again, their argument is far from clear, but it seems that plaintiffs are claiming that Amazon has misrepresented how the non-premium music locker operates, and that plaintiffs have discovered "new" evidence that it is not limited to songs that users already own.

The first "new" piece of evidence that plaintiffs identify is the Music Reports' monthly streaming reports that plaintiffs previously submitted in opposition to defendants' motion for summary judgment. Although the evidence is clearly not new, plaintiffs do use it to raise a new argument that they could have raised before. They claim that the non-premium music locker must permit users to stream songs that they do not own and did not upload themselves. Plaintiffs draw this conclusion because every Music Reports monthly report includes a designation for the "total content uploads weighted," which the report defines as "[r]epresent[ing] total <u>non-purchased</u> content uploaded multiplied by Licensor's ownership share of each song." (emphasis added).

If the reports for the non-premium music locker actually contained the above statement, I may have agreed with plaintiffs that they raise a factual dispute as to whether the non-premium music locker is actually limited to content users already own. But they do not. Plaintiffs made this argument up out of whole cloth. The monthly reports that plaintiffs identify as containing this statement do not regard the non-premium music locker at all. As Amazon points out in its memorandum in opposition to plaintiffs' motion, the monthly reports clearly indicate that the streams reported are for use of plaintiffs' songs on the Amazon Cloud Player, a service which Amazon admits requires a compulsory license. In fact, each report even explains that it is a

"Monthly Statement of Account Under Compulsory License for Making and Distributing Phonorecords."

The second new piece of evidence that plaintiffs claim supports that Amazon misrepresented the non-premium locker's function is a "pop-up message" that first appeared on Music Reports' licensing webpage circa April 19, 2017. The only version of this "pop up message" that plaintiffs provide is a blurry screen-shot inserted in its memorandum that is illegible. However, in its memorandum in opposition, Amazon has provided the Court with the text of the pop-up message, which reads: "Please select a date below to download Monthly Statement of Account for all Section 115-licensed service provides for the selected date. To download statements issued under a voluntary license, please go to the 'My Direct License Statements' tab on the left side of the screen."

Plaintiffs fail to explain why they believe this statement supports their argument. There is no dispute that Music Reports issues monthly reports for various online music services, some of which operate pursuant to a compulsory license and some of which operate pursuant to a voluntary license. This statement does not undermine the Climan declaration nor any ruling in the Order.

### C. The Amazon MP3 Store

In the Order, I held that Amazon did not need to secure a compulsory license to offer plaintiffs' songs on the Amazon MP3 Store because plaintiffs, through their agreements with TuneCore, granted Amazon a voluntary mechanical license for this use. On their motion for reconsideration, plaintiffs argue that this finding was incorrect because provision 4(b) of the Terms and Conditions of the TuneCore agreement and the general practice in the music industry both demonstrate that plaintiffs only granted Amazon a voluntary license to their sound

recordings, not their musical works.

In their memorandum in support of their motion, plaintiffs quote provision 4(b) of the Terms and Conditions as follows: "Company [TuneCore] customarily requires Consumer Stores to secure and pay for music publishing licenses[2] . . . ." This is an incomplete and misleading quotation. Provision 4(b) actually states that: "<u>Outside of the United States</u>, Company customarily requires Consumer Stores to secure and pay for music publishing license." (emphasis added). Although plaintiffs' misrepresentation makes it seem that provision 4(b) supports their argument, it actually undermines it because it further demonstrates that, unlike online music providers that use plaintiffs' songs outside of the United States, Amazon was not required to secure a compulsory mechanical license to offer plaintiffs' songs on the Amazon MP3 Store.

Plaintiffs also claim that the Court failed to consider that "in the music industry, every aggregator like [TuneCore], . . . has numerous divisions; [sic] each of which function independently, and are responsible for completely different licensing responsibilities" and because plaintiffs' agreement is with TuneCore's Distribution Division, which deals exclusively with licensing sound recordings, the agreement could not have granted Amazon a mechanical license. The only evidence plaintiffs had submitted in opposition to the summary judgment motion in support of this contention was the declaration of Richard Cupolo, in which he avers that, "the separation of the sound recording and publishing rights is the norm in the industry" and Yesh never signed up for "TuneCore Publishing . . . [which] handles . . . publishing rights."

To bolster this argument, plaintiffs now submit various blurry screenshots of TuneCore's website, TuneCore's answers to "Frequently Asked Questions," and another Cupolo declaration in which he avers that "[o]nly the TuneCore Publishing Administration Division handles

---

[2] A "music publishing license" is another name for a mechanical license.

9

publishing rights a/k/a composition rights or mechanical rights." Even if this evidence was sufficient to prove a general practice of the entire music industry – which it certainly is not – it would not have any impact on my findings. As I explained in the Order, because the Terms and Conditions of the TuneCore agreements unambiguously provide that Amazon was not required to secure a compulsory mechanical license to offer plaintiffs' songs on the Amazon MP3 Store, plaintiffs cannot use extrinsic evidence to prove a contradictory meaning. See JA Apparel Corp. v. Abboud, 568 F.3d 390, 397 (2d Cir. 2009); Int'l Klafter Co., Inc. v. Cont'l Cas. Co., Inc., 869 F.2d 96, 100 (2d Cir. 1989).

Plaintiffs next argue that the Court erred in finding that their email communications with the TuneCore representative were impermissible parole evidence and could not be used to ascertain the meaning of the TuneCore agreements. Plaintiffs argue that the TuneCore email is admissible to identify the subject matter of the agreement, ascertain the meaning of contradictory terms in the agreement[3], explain the custom and usage of the agreement in the industry, and explain the implied terms of the agreement.

Although I found the email communications to be inadmissible parole evidence, I also explained that even if I had considered them, they would not have affected my interpretation of the Terms and Conditions. Thus, even if the email communications are admissible for the reasons identified by plaintiffs on their motion for reconsideration – which they are not – they do not warrant granting plaintiffs' motion.

**D. Valid Service of the NOIs**

Finally, plaintiffs claim that the Court erred in finding that plaintiffs' August 2014 email to Music Reports stating that, "We [Yesh] wish for Music Reports, Inc. and any of its affiliated

---

[3] Plaintiffs claim that the TuneCore agreement contains "directly contradicting [sic] terms in the same clause," but they fail to identify which terms are contradictory.

companies to cease the issue [sic] of any and all future compulsory mechanical licensing NOI's [sic] on our behalf effectively immediately" was not a revocation of consent to electronic service. Plaintiffs argue that this was incorrect because: (1) in his affidavit, Cupolo averred that he had sent the August 2014 email intending to revoke Yesh's consent to electronic service; and (2) the August 2014 email complied with Music Reports' instructions for revoking consent to electronic service.

First, Cupolo's subjective intentions are entirely irrelevant as to whether the language of the August 2014 email constituted a revocation of consent. Plaintiffs' second argument is absurd. Music Reports' website provides the following instructions to copyright holders on how to revoke consent to electronic service of NOIs: "If you agree to receive NOIs electronically, then future NOIs will be posted to your web account . . . . We will no longer send NOIs by mail unless you withdraw your consent by emailing royaltyservices@musicreports.com." According to plaintiffs, the fact that they sent an email to the address provided automatically means that they revoked consent to electronic service, regardless of the content of the email. As Amazon points out in its memorandum in opposition, if that were true, plaintiffs could have sent an email stating, "Yesh would like to continue to receive electronic service of NOIs," and that would still have operated as revocation of consent. This argument is clearly frivolous.

## II.     Motion for Interlocutory Appeal

Alternatively, if their motion for reconsideration is denied, plaintiffs' request leave to file an interlocutory appeal. Pursuant to 28 U.S.C § 1292(b), a district court may certify an issue for interlocutory appeal if it "involves a controlling question of law as to which there is substantial ground for difference of opinion" and "an immediate appeal from the order may materially advance the ultimate termination of the litigation." The resolution of an issue "need not

necessarily terminate an action" to be considered a controlling question of law. Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria, 921 F.2d 21, 24 (2d Cir. 1990) (internal citation omitted). A substantial ground for difference of opinion may exist "where the issues are difficult and of first impression, or where the party seeking interlocutory review can point to a substantial split in Second Circuit district court rulings" on the relevant issue. In re Air Crash at Georgetown, Guyana on July 30, 2011, 33 F. Supp. 3d 139, 155 (E.D.N.Y. 2014) (internal quotation marks and citations omitted).

An immediate appeal from an interlocutory order "is a rare exception to the final judgment rule that generally prohibits piecemeal appeals," Koehler v. Bank of Bermuda Limited, 101 F.3d 863, 865 (2d Cir. 1996), and the Second Circuit has "repeatedly cautioned [that] use of this certification procedure should be strictly limited." In re Flor, 79 F.3d 281, 284 (2d Cir. 1996). Section 1292(b) certification is thus reserved for "extraordinary cases where appellate review might avoid protracted and expensive litigation,' . . . and is not intended as a vehicle to provide early review of difficult rulings in hard cases." Baumgarten v. Cty. of Suffolk, No. 07-CV-0539, 2010 WL 4177283, at *1 (E.D.N.Y. Oct. 15, 2010) (internal quotation marks omitted).

Plaintiffs claim that the following six issues present controlling questions of law that warrant certification for appeal: (1) "Did the District Court commit a critical factual error by overlooking the fact that the 'Plays Reported to TuneCore per Amazon's Records' column was not the Purchased Content Locker streams"; (2) "Whether the Court exceeded its Article III authority by making material factual and credibility determinations"; (3) "Whether the Court mistaken [sic] about the Regulations in finding the Amazon Purchased Content Locker is exempt from Section 115"; (4) "Whether it was clear error to exclude the TuneCore Email"; (5) "Whether it was clear error to waive the statutorily required 56.1 statement"; and (6) "Whether it

was clear error for the Court to overlook the exhibits attached to the declarations annexed to plaintiff [sic], and proved [sic] the Contested NOIs are invalid." None of these supposed issues comes close to meeting § 1292(b)'s requirements for interlocutory appeal.

By plaintiffs own characterization, the first issue alleges a factual error, and thus does not even raise a question of law, let alone a controlling one. The second issue also alleges a factual error because it addresses plaintiffs' disagreement with the Court's ruling that there is no genuine factual dispute as to whether Amazon has valid compulsory licenses. The third issue, whether the operation of Amazon's non-premium music locker service requires Amazon to secure compulsory licenses, is a controlling issue of law, but is not one for which there is a substantial ground for difference of opinion. In light of the Supreme Court's decision in American Broadcasting Companies, Inc. v. Aereo, Inc., 134 S. Ct. 2498 (2014), it is clear that the non-premium music locker does not involve a distribution of copyrighted works to the public because users download and stream songs in their capacities as owners.

Although both the fourth and fifth issues present questions of law, neither present controlling questions of the law. As to the fourth issue, even if the Second Circuit reversed my ruling on appeal and held that the email communications between plaintiffs and the TuneCore representative are not inadmissible under the parole evidence rule, it would have no impact on the Order because, as I explained, the email communications do not support that Amazon was required to secure mechanical licenses under the Terms and Conditions of the TuneCore agreements. As to the fifth issue, plaintiffs have suffered no prejudice from the Court's waiver of defendant's Local Rule 56.1 obligations. Prior to ruling on the motion for summary judgment, I conducted an "assiduous review of the record," Holtz v. Rockerfeller & Co., Inc., 258 F.3d 62, 73 (2d Cir. 2001) (affirming the district court's decision to conduct an independent review of the

record and not accept the allegations in the defendant's Rule 56.1 statement as admitted facts even though the plaintiff failed to file a responsive statement), and I thus would have ruled the same way even had I required defendant to file a Rule 56.1 statement. More importantly, plaintiffs never objected to the waiver of the Rule 56.1 statement, and thus there are no grounds for any appeal on this basis.

Finally, in regards to the sixth issue, I do not even understand what plaintiffs claim was "clear error." If plaintiffs are requesting an appeal as to whether it was error for the Court to determine that the Music Reports monthly streaming reports do not undermine the Climan declaration, then this issue is subsumed within plaintiffs' third issue – whether there are any material facts in dispute – and not subject to interlocutory appeal.

## CONCLUSION

Plaintiffs' motion for reconsideration or, in the alternative, for leave to file an interlocutory appeal, is denied.

**SO ORDERED.**

_____
U.S.D.J.

Dated: Brooklyn, New York
     June 16, 2017